Jimmy Neal TERRY, Appellant,

v.

Gore EDGIN dba Gore Edgin Construction Company, and Cleveland County, Oklahoma, acting by and through its Board of County Commissioners, Defendants,

and

The City of Norman, Oklahoma, a Municipal Corporation, Appellee.

No. 48452.

Supreme Court of Oklahoma.

Feb. 22, 1977.

Rehearing Denied March 21, 1977.

Wayne Wells, Lampkin, Wolfe, Burger, Abel, McCaffrey & Norman, Oklahoma City, for appellant.

Fielding D. Haas, Norman, for appellee.

SIMMS, Justice.

The primary issue presented here is whether the City of Norman is subject to liability for the existence of a hazard upon a street when that street is located within the municipal boundaries of Norman, but is also a county section line road.

Around 1:00 a.m. on February 10, 1974, Jimmy Terry was driving south on Henny Road when he collided with a pile of gravel in the roadway. He brought this action for personal injuries against the City of Norman, Cleveland County and the Gore Edgin Construction Company. The trial court granted City's Motion for Summary Judgment and Terry appeals that ruling. Cleveland County and Gore Edgin Construction Company are not parties to this appeal.

The Court of Appeals reversed and remanded to trial court for further proceedings by unpublished opinion. Appellee, City of Norman, seeks Certiorari. Certiorari granted. Opinion of Court of Appeals vacated. Cause reversed and remanded.

The relevant portions of plaintiff's petition as amended, alleged that the location of the gravel on the roadway was within the City limits of Norman; that the gravel pile had been placed on the roadway during the afternoon of the previous day by the Gore Edgin Construction Company; that the City of Norman allowed the gravel to be placed in the roadway and allowed the gravel to remain there when it knew, or should have known, that automobiles would be likely to collide with it; that at all times the defendants Cleveland County and Gore Edgin Construction Company were the agents, servants and employees of the City of Norman and were acting within the scope of their employment; that the defendants failed to post any warning of the presence of the gravel and that as a result of the negligence of the defendants, plaintiff suffered permanent, painful and progressive injuries.

The City of Norman denied all plaintiff's material allegations; City conceded that the location of the gravel on Henny Road was within its municipal limits, but denied any responsibility or liability for the gravel's presence, alleging that the County Commissioners contracted with Gore Edgin Company to dump the gravel on Henny Road, a section line road and that the gravel was to be spread later by county personnel; that the County Commissioners were acting pursuant to authority of law in making this contract and that they were acting in their governmental capacity; City asserted that it had no knowledge of the Cleveland County-Gore Edgin contract and that it had no notice or knowledge of the gravel. The City further alleged that warning stakes were posted around the gravel and that they were readily visible to drivers.

The City attached to its answer an affidavit of the Norman Supervisor of Street Maintenance which stated that all contracts for work and materials furnished the City for use upon its public ways were under his jurisdiction; that he knew that no responsible City Officer knew about the contractual arrangement between Cleveland County and Gore Edgin; that the City had no knowledge of, or responsibility for, the gravel on the section line road; that the entire transaction was conducted exclusively by Cleveland County and its agents and employees and that no City personnel were involved in any manner.

City then filed its motion for summary judgment which was sustained by the court. The trial judge rendered a written "memorandum" setting forth the findings and con-

clusions of the court and the relevant portions are as follows:

"Depositions indicate[1] and the briefs of the parties infer it is undisputed between the plaintiff and the defendant-City that there was an unwritten agreement between the City and County whereby the County maintained all section line roads inside the City limits but outside the City-proper, while the City maintained section line roads and streets within the developed portion of the City. The City was aware at all times pertinent to this case that the County was maintaining section line roads inside the City limits, although there is no evidentiary showing that the City had any knowledge of the specific Henny Road gravel work being done on February 9, 1974. Plaintiff contends such notice is imputed to the City. "The City contends notice cannot be imputed to it of the County's gravel work and leaving it piled in the roadway for two reasons: First, the City had no actual notice of the condition, and the condition had not existed long enough to impute notice since it was not otherwise negligent, and second, the City had no supervisory or contractual connection with the Construction Company or the County."

The trial judge went on to find that the City had no actual notice of the gravel in the roadway.

Although the judge cited several cases[2] wherein it had been decided that whether the circumstances were such that the municipality should have discovered the defect through ordinary care was a question of fact, and in spite of his observation that there were no Oklahoma cases indicating what might or might not be a reasonable time to discover a street defect, the judge went on to state that:

"In this case, the undisputed facts show the City had a maximum of nine hours to learn of the hazard created by a pile of gravel on a section line road in the country, but within the geographic limits of the City. Plaintiff has attached no evidentiary material that would show the City had actual notice of this specific hazard, or submitted any authority for the proposition that existence of the hazard for as long as nine hours should have been discovered by the exercise of due diligence. Absent any authority to the contrary, and in view of the lengthy periods of time involved in the cases previously mentioned, this Judge rules as a matter of law the mere existence of a hazard for a period of nine hours on a rural road is insufficient by itself to show the City knew or should have known of it.

"Plaintiff argues that the City, being responsible for the streets and roads on it, should have supervised and controlled the gravelling of Henny Road, and such does not sound the least unreasonable until the problem of overlapping municipalities is considered. The statutes of the State of Oklahoma (69 O.S.1971, Sections 601, 603, 628) assign the duty of opening and maintaining county section line roads and bridges to the County Commissioners of the County. It would appear that if the City attempted to interfere with the Commission's performance of that duty, it could be immediately enjoined. No authority has been offered by plaintiff to show any right in the City to exercise supervision or control over the County's road building practices, and small wonder, for there appears to be a dearth of such authority.

"In this case, had the City learned or been advised of the pile of gravel in Henny Road, it may well have wanted to post a flagman to warn residents of the danger. Absent any actual notice or a reasonable time to learn of the hazard in the road, liability cannot be imposed for obstructions which it did not create and over which it had no control."

---

1. Depositions were not made a part of the record on appeal.

2. *City of Norman v. Sallee*, 205 Okl. 419, 238 P.2d 292 (1951); *City of Tulsa v. Wells*, 79 Okl. 39, 191 P. 186 (1920); *Town of Norman v. Teel*, 12 Okl. 69, 69 P. 791 (1902).

The trial court concluded that there was no substantial controversy as to any material fact and sustained City's motion.

Appellant Terry urges two major propositions of error. First, he argues that the City of Norman had a nondelegable duty to maintain Henny Road in reasonably safe condition and that the City could not relieve itself of liability for failure to perform that duty by delegating that responsibility to the County Commissioners. Appellant next argues that the question of whether or not the City of Norman had actual or constructive notice of the gravel is a question of fact which must be decided by the trier of fact after presentation of evidence.

To sustain his position that the City of Norman was solely responsible for maintaining Henny Road, appellant relies upon numerous decisions from this Court holding that a municipal corporation has a nondelegable duty to maintain its streets and roads in reasonably safe condition for the traveling public. E. g., *City of Wagoner v. Black,* 186 Okl. 207, 97 P.2d 21 (1959); *City of Hugo v. Nance,* 39 Okl. 640, 135 P. 346 (1913); *City of Tulsa v. Macura,* 186 Okl. 674, 100 P.2d 269 (1940).

The City of Norman concedes that this general statement of the law is correct but denies that it is applicable to the facts of this case. City maintains that the County Commissioners have exclusive jurisdiction over Henny Road, notwithstanding the fact that it is situated within the corporate boundaries of the city, because it is a county section line road. City argues that for this reason it had no obligation to receive notice of the county's construction work on the road, no right or power to consent to the work and no authority to control or supervise the work. City relies upon the provisions of 69 O.S.1971, §§ 601, 603 and 628 to support this position.

Title 69 O.S.1971, § 601 provides that: "The County Highway System shall be composed of all public roads within any county, less any part of any road or roads which may be taken over as a State highway by the Commission. It shall be the duty of the Board of County Commission-

ers in each county to construct and maintain as county highways those roads which best serve the most people of the county. For this purpose the Board of County Commissioners is authorized to use any funds which are in the County Highway Fund, subject to statutory restrictions on the use of any of such funds, together with any money derived from any agreement entered into between the Commission and the Federal Government, any county or any citizen or group of citizens who have made donations for that purpose. The Boards of County Commissioners of the various counties shall have exclusive jurisdiction over the designation, construction and maintenance and repair of all of the county highways and bridges therein."

Title 69, O.S.1971, § 603 provides that: "The Board of County Commissioners of any county may, under the direction of the Commission, contract for grading, draining or hardsurfacing any street within any municipality where such street is a continuation of or a connecting link in the State or County Highway System."

Title 69, O.S.1971, § 628 provides that: "The Board of County Commissioners shall have power and authority upon its own motion to open and establish public roads or section lines anywhere in the county and obtain right-of-way therefor, either by amicable settlement or condemnation proceedings as provided by law."

Do these provisions create a statutory exception to the general rule that a municipality has a nondelegable duty to maintain its streets and roads in reasonably safe condition, by placing jurisdiction over county section line roads located within the boundaries of a municipality in the county commissioners? This is a question of first impression. Neither party found a decision directly on point and we did not find one through our independent research.

We do have, however, the benefit of an opinion of our Attorney General which addressed the question of the power of the

county commissioners to maintain streets and roads within municipal boundaries.

In 1963 the Attorney General rendered an opinion, numbered 63–159, advising a legislator that county commissioners may not maintain streets and roads within municipal boundaries without specific statutory provisions to the contrary. In reaching this conclusion the Attorney General cited certain provisions of Title 11, O.S.1961, which make roads and streets located within municipal limits independent of other road systems of the state and place responsibility for maintenance of municipal roads and streets in the governing board of the municipality. Those provisions are unchanged since the date of the Attorney General's opinion. They are: 11 O.S.1961, § 72 (now 11 O.S. 1971, § 72) which states:

"The incorporated cities and towns of the State of Oklahoma are hereby made separate road districts independent of the other road districts of the State of Oklahoma."

Title 11, O.S.1961, § 73 (now 11 O.S.1971, § 73) which states:

"All incorporated cities and towns in the State of Oklahoma are hereby granted specific authority to pass ordinances and rules and regulations for the working and repairing of streets, alleys and public highways within the boundaries of said cities and towns . . ."

Title 11, O.S.1961, § 111 (now 11 O.S.1971, § 111) which states:

"The governing body of any city or town may in addition to all other taxes levied for municipal purposes provide for an annual tax not exceeding one (1) mill against all the taxable property of such city or town, for the purpose of repairing and maintaining any permanently improved streets in said city or town, heretofore and hereafter constructed."

In this opinion the Attorney General gave consideration to two of the statutory provisions upon which the City of Norman relies as exceptions to the general rule that county commissioners have no jurisdiction to maintain streets within a municipality. He concluded that 69 O.S.1961, § 44, now 69 O.S.1971, § 601, is not an exception; rather, it clearly contemplates inclusion of only those roads within a county which lie *outside* municipal boundaries. He observed that any other interpretation would be in direct conflict with Section 72 of Title 11, Oklahoma Statutes.

The Attorney General found that 69 O.S.1961, § 84, now 69 O.S.1971, § 603, is a statutory exception to the general rule. Thus, county commissioners may, under direction of the State Highway Commission, contract for grading, draining or hardsurfacing of any street within a municipality where that street is a continuation of, or a connecting link in the State or County Highway System.

We are persuaded by the reasoning of the Attorney General's Opinion and adopt it. Further, we have held that silence by the legislature may be regarded as acquiescence or approval of the interpretation placed upon statutory provisions by the Attorney General. *Goble v. Mazie Dependent School District D–32*, Okl., 488 P.2d 156 (1971). In this instance, the legislature has not been silent but has, we believe, affirmatively shown its approval of the Attorney General's Opinion and his interpretation of 69 O.S.1971, § 601 (then 69 O.S.1961, § 44) through the recent enactment of 69 O.S. Supp.1975, §§ 601.1 and 601.2.[3]

This view, however, does not sustain the City of Norman's arguments that Henny Road was an exception to the general rule of a municipality's sole responsibility for the safe condition of its streets.

3. § 601.1 provides:
"The board of county commissioners in each county may cause to be prepared, and may adopt by resolution, standard plans and specifications for the establishment and construction of new roads or bridges to be dedicated to the use and benefit of the public. Such roads or bridges must meet specifications before being accepted and becoming public roads."
§ 601.2 provides:
"This act shall not apply to cities, towns, planning district or any other area where jurisdiction is otherwise vested by law in a political subdivision to establish standards for the dedication of roads or bridges."

As stated above, 69 O.S.1971, § 601 is not an exception. While 69 O.S.1971, § 603 is an exception, this situation does not come within its provisions. Henny Road is merely alleged to be a section line road. A section line road, without more, is not a continuation of a connecting link in the State or County Highway System. It is also only alleged that the County Commissioners dumped gravel on Henny Road. This obviously does not amount to a contract for grading, draining or hardsurfacing under the direction of the State Highway Commission.

■ Neither do we uphold City's argument that 69 O.S.1971, § 628 is an exception. Section 628 must be interpreted in a manner consistent with the interpretation of 69 O.S.1971, § 601, as discussed above, to include only those "public roads" which be outside the boundaries of a municipality. Any other interpretation would be in direct conflict with 11 O.S.1971, § 72. Further, "public road" is defined by 69 O.S.1971, § 232, as a "road constructed to connect other public roads or streets, but not connected to the highway." It is clear that a road is not a "continuation of or a connecting link in the State or County Highway System" simply because it is a section line road.

■ When is a municipal road or street a continuation of or connecting link in the State or County Highway System within the purview of 69 O.S.1971, § 603?

We have no decisions directly on point, but again, the Attorney General has addressed that question. In his opinion numbered 66–287, the Attorney General relied upon his previous opinion, No. 63–159, discussed above, in answering the question of whether county commissioners could designate a city street as a county highway when that street was not part of the State Highway System. The Attorney General found that such a designation by the commissioners would not, of itself, make a municipal street a part of a county highway system, but that whether it would be so would depend upon the fact of its actually being a continuation of or a connecting link in the county highway system. He concluded that whether any particular road or street is a continuation of or connecting link in the county highway system is a question of fact to be decided in each instance.

We find this conclusion to be a correct statement of the law.

City's reliance upon *Harlan v. City of Tucson,* 82 Ariz. 111, 309 P.2d 244 (1957) is not appropriate. There the question before the court was whether the city or state was liable for negligent construction and maintenance of a city street which was a state highway. This is precisely the determination which has not been made in the instant matter.

■ The City of Norman has not shown that Henny Road falls within any exception which would relieve City of its nondelegable duty to maintain it in reasonably safe condition for travel by the public or which would relieve City of its liability for failure to perform that duty.

■ Appellant also challenges the trial court's determination as a matter of law, that the City did not have actual or constructive notice of the gravel hazard. Appellant relies upon numerous decisions of this Court wherein the determination of whether the circumstances were such that a municipal corporation had actual notice or could be found to have constructive notice of a defect in its streets or sidewalks has always been made as a question of fact. E, g., *City of Hugo v. Nance, supra; City of Wagoner v. Black, supra; City of Norman v. Sallee, supra.*

We agree with Appellant that the cases have consistently so held, and we are not presented with any argument which persuades us that the facts of this matter compel a different rule.

While it is true that the factual situations presented in many of our past decisions did involve defects which had existed for a considerable period of time, in *City of Wagoner v. Black, supra,* the City's liability was enforced for a hazard which was of shorter duration than the gravel pile here at issue.

In that case, plaintiff tripped at 7:30 p. m. over a wire left extended across a street during that same afternoon by a WPA worker.

■ There is no formula from which it may be calculated how long a hazard must exist, before a city may be found to have notice of it. Each case must be decided upon its own circumstances by the trier of fact.

City does not cite any authority to support its implicit contention that a municipality is somehow less responsible for the safety of its outlying streets and roads than it is for those located closer to the metropolitan area. We are not aware of any support for this position.

In 2 McQuillan Municipal Corporations § 7.46 (3rd Ed.1966) it is stated in regard to territory annexed by a municipality, that:

"All public highways in annexed territory become, without any action on the part of the municipal authorities, streets of the municipality, and it assumes the same duties and liabilities as to them as rests upon it in reference to the public ways of its original territory. Thus when a municipality annexes territory embracing a county road, the title in fee to such part of the county road vests in the municipality in trust for the public. And on the addition of territory embracing a public highway and a bridge over a stream the municipal authorities acquire at once the right to exercise jurisdiction over the bridge and are chargeable with the duty of keeping it in repair. On change of municipal limits the control over highways passes by virtue of law from one political subdivision of the state to the other accordingly as the highways are in the one or the other. Thus where corporate limits are extended to embrace territory in which there is a public highway formerly under the jurisdiction of a county, its control passes to the municipal corporation. The city does not merely succeed to the rights of the county in the highway, but holds the highway under the authority of the state just as it holds any other street and with all the powers over it and rights in it which it may exercise as to its other streets. And it follows as of course that severance of territory operates as an extinguishment of the rights of the city in the streets and alleys of the portion withdrawn."

See also: *City of Wichita Falls v. Bowen,* 143 Tex. 45, 182 S.W.2d 695, 154 A.L.R. 1434; *Ambrister v. City of Norman,* Okl., 344 P.2d 665 (1959).

■ City also argues that it cannot be charged with notice of the county's negligently created hazard because the "unwritten agreement" found by the trial court to exist between City and Cleveland County regarding maintenance of outlying section line roads, was not supported by evidence and was not binding because not formally entered into by the governing boards of the entities. We find this argument to be without merit. Municipalities cannot divest themselves of their duty to maintain their streets and roads in a safe condition. *City of Wagoner v. Black, supra; City of Hugo v. Nance, supra.* Whether such a purported delegation is formal or informal is not material as neither is effective.

In view of the foregoing, we agree with appellant that there were material issues in substantial controversy before the trial court and that the award of summary judgment was therefore in error. See, *Love v. Harvey,* Okl., 448 P.2d 456 (1968).

We grant Certiorari and vacate the opinion of the Court of Appeals. We reverse the trial court's summary judgment and remand this cause with instructions to vacate said judgment and to proceed in a manner which is not inconsistent with the views expressed herein.

DAVISON, WILLIAMS, BERRY and DOOLIN, JJ., concur.

HODGES, C. J., LAVENDER, V. C. J., and IRWIN and BARNES, JJ., dissent.